Argued and submitted October 11, 1991, rule held valid December 9, 1992

# UNIFIED SEWERAGE AGENCY OF WASHINGTON COUNTY,
*Petitioner,*

*v.*

# OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY
and Environmental Quality Commission,
*Respondents.*

(CA A66009)

843 P2d 502

Loretta S. Skurdahl, Assistant County Counsel, Hillsboro, argued the cause and filed the brief for petitioner.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Unified Sewerage Agency of Washington County (petitioner) is a County Service District formed under ORS Chapter 451. The Department of Environmental Quality (DEQ), in compliance with the Federal Water Pollution Prevention and Control Act, 33 USC §§ 1251 to 1376, issues National Pollutant Discharge Elimination System (NPDES) permits to sewage treatment facilities for the purpose of approving and regulating pollutant discharges. ORS 468.740.[1]

ORS 468.065 provides, in part:

"(2) By rule and after hearing, [the Environmental Quality Commission (EQC)] may establish a schedule of fees for permits issued pursuant to ORS 468.310, 468.315, 468.555 and 468.740. The fees contained in the schedule shall be based upon the anticipated cost of filing and investigating the application, of issuing or denying the requested permit, and of an inspection program to determine compliance or noncompliance with the permit. The fee shall accompany the application for the permit.

"* * * * *

"(5) Any fee collected under this section shall be deposited in the State Treasury to the credit of an account of the department. Such fees are continuously appropriated to meet the administrative expenses of the program for which they are collected."

By rule, OAR 340-45-075, and pursuant to ORS 468.065(2), EQC has adopted filing, processing and annual compliance fees for discharge permits. Petitioner operates five sewage treatment plants, each of which has a discharge permit issued by DEQ pursuant to ORS 468.740.

The 1989 Legislature approved DEQ's budgetary decision package, which included a funding proposal to provide a staff position to help implement regulatory controls to clean up the Tualatin River and authorized DEQ to seek permit fee increases to fund the activities. The increased fees are based on sewage flow generated within the Tualatin River

---

[1] The statutes numbered ORS 468.686 to ORS 468.833 have since been renumbered and are now contained in ORS chapter 468B. We refer to them by their former numbers.

basin and are assigned to municipalities holding permits that collect and treat wastewater, which are only petitioner and the City of Portland. The annual amount budgeted to be recovered from permit fee increases is $60,500.

Sewage sludge is a by-product of the domestic wastewater treatment process. At the direction of the 1983 legislature, EQC and DEQ adopted rules and guidelines to enable the beneficial use of domestic sewage treatment facility sludge as a soil amendment. The program that DEQ developed to oversee management of sludge is based on providing technical direction to sludge sources about sludge management, given the quality and quantity of sludge that they generate and the availability and characteristics of the sites to which the sludge may be applied. The compliance fee increase to fund sludge management activities is allocated among facilities according to their size and sludge production.

In 1990, EQC, purporting to act pursuant to its authority to assess permit fees under ORS 468.065(2), authorized DEQ to hold a rulemaking hearing for the purpose of considering permit fee increases. The increases were proposed as amendments to OAR 340-45-075(3) to address several water pollution control issues, including DEQ's monitoring efforts associated with the Tualatin River basin (referred to by the parties as Tualatin Basin pollution abatement activities) and its sludge management program. Presumably because petitioner's facilities and the City of Portland Tryon Creek facility are the only facilities that release sewage into the Tualatin Basin, they are the only facilities to which the Tualatin Basin pollution abatement fees are applicable.

On May 25, 1990, over petitioner's objection, EQC adopted DEQ's proposed amendments to OAR 340-45-075, including the contested compliance fee increases. Petitioner now challenges the rule amendments pursuant to ORS 183.400.

ORS 468.065 permits EQC, by rule, to establish permit fees based on the anticipated costs linked to the particular kind of permit, including inspection to determine compliance. In its first assignment of error, petitioner contends that, in adopting amendments to OAR 340-45-075(3),

the Commission failed to follow the cost criteria in ORS 468.065(2) and thereby exceeded its statutory authority. Petitioner claims that the fees, particularly those related to Tualatin Basin activities, impermissibly charge for review of items not related to licensing and permit review, including engineering construction plans and review of "nonpoint" sources of pollution. Because the statute requires that fees for permits be based on the anticipated cost of particular activities, petitioners contend that the record must reflect that the fees were *in fact* based on anticipated costs. Petitioner states:

> "In sum, the state agency gave a general description of a need for more resources to enable it to deal with a general subject matter: the Tualatin River. It did not identify any anticipated activity or costs for specific permits. It did not articulate sufficient basis for a fee of $60,500 per year, imposed almost entirely upon one entity, for specific permits.

> "On this state of facts, the respondents have, at best, provided inadequate information to enable the Court to determine whether or not the rule was within the statutory authority of the agency. The record strongly suggests that costs outside the scope of statutory fee authority were relied upon in arriving at this rule. On either basis, the Court should find that the agency exceeded its authority and declare the rule invalid under ORS 183.400(4)(b)."

■ As we understand petitioner's argument, it is that the fees allocated to it have not been shown to be identifiable with operations or with DEQ's monitoring of its operations. The argument assumes, mistakenly, that it is the agency's burden to justify its rule. It also overlooks the fact that, in our review under ORS 183.400, we do not examine the factual basis for the rule or inquire whether DEQ's actual assessments are supported by the evidence. *See Fund for Animals v. Dept. of Fish & Wildlife*, 94 Or App 211, 765 P2d 215, *rev dismissed* 307 Or 611 (1989). The unstated premise of petitioner's claim appears to be that the new fees are not properly recoverable as permit fees under ORS 468.065(2). We review that contention to determine whether the rule is within the range of discretion allowed by the general policy of the statute, *i.e.*, whether the proposed fees are appropriately assessed under ORS 468.065(2). *See Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980).

Under ORS 468.740, an NPDES permit is required whenever a disposal system or industrial or commercial establishment or activity discharges wastes into the waters of the state; constructs, installs, modifies or operates a disposal system; or increases waste discharges in volume or strength beyond the level permitted under an existing permit. ORS 468.740(1)(a) - (e). Plans and specifications for construction or modification of a disposal system must be submitted to DEQ for approval. ORS 468.742.

Any system, whether new or existing, must operate under water quality and purity standards established by EQC. The standards must consider waste solids, bacteriological organisms, oxygen demand and other factors bearing on water quality and public health. ORS 468.735. DEQ's review of a permit application necessarily involves review of scientific data and, when appropriate, engineering data about the permittee's facility. ORS 468.065(4) provides:

> "The department may require the submission of plans, specifications and corrections and revisions thereto and such other reasonable information as it considers necessary to determine the eligibility of the applicant for the permit."

Additionally, ORS 468.065(5) grants DEQ permission to require periodic reports from those holding permits, including information concerning the amount and nature of pollutants and "any such other information as the department may require."

In its background report to EQC describing the rationale for the proposed permit fee increases, DEQ proposed that the fees related to Tualatin Basin pollution abatement efforts be allocated on the basis of sewage flow generated within the Tualatin River basin and

> "be effective until the Department concludes its special oversight activities to ensure that the wasteload allocations for point and nonpoint sources of pollution are achieved and water quality standards in the Tualatin Basin are consistently met."

Responding to petitioner's objections to the fees, DEQ gave an extensive list of the activities that it would perform relating to the Tualatin River Basin:

> "Coordination and response to [petitioner's] plan and [Total Maximum Daily Load] implementation activities; review of

engineering plans and specifications for improvements at five [of petitioner's] and one City of Portland sewage treatment facilities; additional monitoring and compliance assurance activities; and participation in the preparation of guidance and review of nonpoint source control plans and implementation activities."

Petitioner does not contend that pollution abatement activities with regard to the Tualatin River are not an appropriate subject for state regulation. We are persuaded that the Tualatin Basin pollution abatement effort for which the agency seeks to assess fees is the type of program for which compliance fees may be collected under ORS 468.065(2).

Petitioner contends that the sludge component of the compliance fee is not applicable to its Durham plant, because that fee is related primarily to DEQ's monitoring of agricultural fields where sludge is being applied and the Durham plant sludge is not applied to agricultural land, but is incinerated and buried in a landfill. EQC and DEQ found that assessment of the fee to the Durham plant will help fund DEQ's regulatory oversight responsibilities in assuring that sludge generated at Durham is properly managed. Under its ORS 468.065 authority, DEQ is entitled to maintain whatever level of inspection that it deems necessary to determine petitioner's compliance or noncompliance with its permit. We may not inquire into the facts underlying DEQ's determination that the Durham plant is subject to the sludge assessment. DEQ has explained adequately the basis for the assessment to petitioner's Durham plant.

As its second assignment of error, petitioner contends that EQC and DEQ were required to adopt amendments to OAR 340-45-075(3) by a contested case proceeding, rather than by rule, because the Tualatin Basin Pollution Abatement fee is not an enactment of general application, as defined in ORS 183.310(8), but, rather, is directed at only two entities and should be treated, accordingly, as a contested case, pursuant to ORS 183.310(2).

ORS 468.065(2) requires that permit fees be established "by rule and after hearing." As we have held, the fees that petitioner challenges were authorized by ORS 468.065(2), and petitioner does not contend that the rules implementing them were not properly promulgated. Despite

petitioner's strong interest in the outcome of the rule making proceeding, we are not persuaded that it was entitled to a contested case hearing.

Rule held valid.